KENNETH G. PARKER (SBN 182911)
  kenneth.parker@haynesboone.com
WILLIAM C. O'NEILL (SBN 251071)
  william.oneill@haynesboone.com
HAYNES AND BOONE, LLP
18100 Von Karman Ave., Suite 750
Irvine, California 92612
Telephone:   (949) 202-3014
Facsimile:   (949) 202-3114

THOMAS F.A. HETHERINGTON
  (Texas Bar No. 24007359)*
  thomas.hetherington@emhllp.com
DAVID T. McDOWELL
  (Texas Bar No. 00791222)**
  david.mcdowell@emhllp.com
JARRETT E. GANER
  (Texas Bar No. 24055520)*
  jarret.ganer@emhllp.com
SHANNON A. LANG (SBN 257470)
  shannon.lang@emhllp.com
EDISON, MCDOWELL & HETHERINGTON LLP
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
Telephone:   (713) 337-5580
Facsimile:   (713) 337-8850
*    admitted *pro hac vice*
** *pro hac vice* pending

Attorneys for Defendants
PHL VARIABLE INSURANCE COMPANY,
PHOENIX LIFE INSURANCE COMPANY, and
THE PHOENIX COMPANIES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Wilmington Savings Fund Society, FSB, as successor in interest to Christiana Bank & Trust Company, as trustee for JOHN DOE TRUST 1, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>PHL Variable Insurance Company, *et al.*,<br><br>                    Defendants. | Case No. CV12-04926-SWV-AJWx<br><br>Assigned to:  Hon. Stephen V. Wilson<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:           October 15, 2012<br>Time:          1:30 PM<br>Courtroom:      6 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

II.  STRANGER ORIGINATED LIFE INSURANCE ("STOLI") ............................ 1

   A.  STOLI IS ILLEGAL ........................................................................................ 1

   B.  STOLI RELATED LITIGATION ..................................................................... 3

      1.   Litigation addressing policy validity ..................................................... 4

      2.   Litigation addressing premium retention ............................................. 4

III. BACKGROUND ...................................................................................................... 6

   A.  THE POLICIES ............................................................................................... 6

   B.  PHOENIX'S ALLEGED WRONGDOING ....................................................... 6

IV.  ARGUMENT ............................................................................................................ 8

   A.  PLAINTIFF'S RICO CLAIM FAILS .............................................................. 8

      1.   The alleged RICO enterprise is not distinct from defendants ............. 8

      2.   No predicate criminal conduct is alleged ............................................ 11

      3.   Plaintiffs fail to plead proximately caused damages ......................... 13

      4.   Plaintiffs fail to state a RICO conspiracy claim ................................ 15

   B.  PLAINTIFF'S FRAUD AND CONSPIRACY CLAIMS FAIL ....................... 15

      1.   Plaintiffs' fraud allegations fail to satisfy Rule 9 ............................. 15

      2.   Plaintiffs fail to state a cause of action for fraud ............................. 15

      3.   Plaintiffs' fail to state a fraudulent concealment claim ................... 16

      4.   Plaintiffs fail to state a conspiracy claim .......................................... 18

   C.  PLAINTIFFS ARE NOT ENTITLED TO A DECLARATORY JUDGMENT ...... 18

      1.   Plaintiffs improperly seek an advisory opinion ................................. 18

      2.   Plaintiffs fail to allege facts establishing Policies' validity ............ 20

      3.   Plaintiffs' declaratory judgment claims are redundant .................... 21

      4.   The Court should decline to exercise jurisdiction .............................. 21

   D.  PLAINTIFF'S STATE-LAW STATUTORY CLAIMS FAIL ......................... 22

      1.   Plaintiffs fail to state fraud with particularity ................................. 22

i

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

2.   Plaintiff's California's Unfair Competition Law claim fails ........................ 22

3.   Plaintiff's Connecticut Unfair Trade Practices Act claim fails ................... 24

E.   BREACH OF GOOD FAITH AND FAIR DEALING CLAIM FAILS .............................. 24

F.   PROMISSORY ESTOPPEL CLAIM FAILS .................................................................. 25

G.   BREACH OF CONTRACT CLAIM FAILS ................................................................... 25

H.   PLAINTIFFS SEEK IMPROPER VENUE .................................................................. 25

V.   CONCLUSION ...................................................................................................... 25

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# **TABLE OF AUTHORITIES**

## CASES

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101 (9th Cir. 2011) ........................ 21

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*,
    938 F.Supp. 825 (S.D. Fla. 1996) ............................................... 16

*Bessette v Avco Fin. Servs, Inc.*, 230 F.3d 439 (1st Cir. 2000) .................... 9

*Bodtker v. Forest City Trading Group*,
    No. CV-99-533-ST, 1999 WL 778583 (D. Or. Oct. 1, 1999) ................. 10

*Brannon v. Boatmen's First Nat'l Bank*, 153 F.3d 1144 (10th Cir. 1998) .......... 9

*Brehm v. 21st Century Ins. Co.*, 83 Cal. Rptr. 3d 410 (Cal. Ct. App. 2008) .......... 24

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) ......................... 11

*Bucklew v. Hawkins, Ash, Baptie & Co.,* 329 F.3d 923 (7th Cir. 2003) ............... 9

*Burger King Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999) ...................... 24

*Chagby v Target Corp.*, 358 Fed. App'x. 805 (9th Cir. 2009) ....................... 9

*Chiarella v. U.S.*, 445 U.S. 222 (1980) ............................................ 17

*Cities Serv. Co. v. Department of Energy*, 520 F. Supp. 1132 (D. Del. 1981) ........... 19

*City of Aurora v. Green*, 467 N.E.2d 610 (1984) ................................... 16

*Coleman Dupont Homsey v. Vigilant Ins. Co.,*
    496 F.Supp.2d 433 (D. Del. 2007) .......................................... 24

*Commercial Credit Corp. v. Sorgel*, 274 F.2d 449 (5th Cir. 1960) .................. 16

*Cornell Glasgow, LLC v. La Grange Props., LLC*, No. N11C-05-016, 2012 WL
    2106945 (D. Super. Ct. June 6, 2012) ................................... 17, 18

*Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897 (Ill. 1996) .......................... 24

*Cummings v. Allstate Ins. Co.*, 832 F.Supp.2d 469 (E.D. Pa. 2011) ................. 24

*Doctors' Co. v. Superior Court,* 49 Cal.3d 39, 775 P.2d 508 (1989) .............. 18

*Encarnacao v. Phase Forward Inc.,*
    No. CV-11-05090 ODW (PLA), 2012 WL 404971 (C.D. Ca. Feb. 7, 2012) ......... 13

*Englewood Lending Inc. v. G & G Coachella Invs.*, LLC,

    651 F.Supp.2d 1141 (C.D. Cal. 2009)........................................................ 21

*Erlich v. Menezes*, 981 P.2d 978 (Cal. 1999) ............................................. 18

*Flying J Inc. v. Meda, Inc.*, No. 04-08-00169-CV,

    2012 WL 1707897 (Tex. App.—San Antonio May 16, 2012) ............................. 17

*Fogie v. THORN Americas, Inc.*, 190 F.3d 889 (8th Cir. 1999).......................... 9

*Foley v. Interactive Data Corp.*, 765 P.2d 373, n.8 (Cal. 1988) ...................... 17

*Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734 (S.D. Tex. 1998).............. 24

*Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998).......................... 21

*Greenstar, LLC v. Heller*, 814 F.Supp.2d 444 (D. Del. 2011) ................................ 15

*Grisby v. Russell*, 222 U.S. 149 (1911) .................................................... 2

*Grunstein v. Silva*, No. 3932-VCN,

    2009 WL 4698541 (Del. Ch. Dec. 8, 2009). .......................................... 16

*Harbor Hosp. Servs., Inc. v. Gem Laundry Servs., LLC*,

    No. 4830 JULY TERM 2000, 0207 AUG. TERM 2000, 2001 WL 1808556  (Pa.

    Com. Pl. July 18, 2001) .......................................................... 17

*Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 17 Cal. Rptr. 2d 649

    (Cal. Ct. App. 1993) ............................................................. 17

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992).......................... 13

*Howard v. Am. Online Inc.*, 208 F.3d 741 (9th Cir. 2000) ........................... 15

*In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*,

    601 F.Supp.2d 1201 (S.D. Cal. 2009) ............................................. 10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*

    *Products Liab. Litig.*, 754 F.Supp.2d 1145 (C.D. Cal. 2010) .................... 15

*Jones v. Hyatt Ins. Agency*, 741 A.2d 1099, 1107 (Md. 1999)......................... 17

*Karn v. Coldwell Banker Res. Real Estate, Inc.*, 705 So. 2d 680 (Fla. App. 1998) ... 17

*Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872 (Del. Ch. 2009) .................... 17

*Lee v. Gen. Nutrition Cos.*, No. CV 00-13550LGB(AJWX),

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

2001 WL 34032651 (C.D. Cal. Nov. 26, 2001) ...................................... 10

*Lincoln Nat'l Life Ins. Co. v. Calhoun*, 596 F.Supp.2d 882 (D.N.J. 2009) ................. 4

*Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546 (D. Del. 2010) ................ 5

*Living Designs Inc. v. E.I. Dupont de Nemours & Co.*,

    431 F.3d 353 (9th Cir. 2005) ............................................................ 9

*Lorenz v. CSX Corp.*, 1 F.3d 1406, 1412 (3d Cir. 1993) ........................... 9

*Magnetti v. Univ. of Md.*, 909 A.2d 1101, 1105 (Md. Ct. Spec. App. 2006) ............ 24

*Mattel, Inc. v. MGA Entm't, Inc.*, 782 F.Supp.2d 911, 1024 (2011) ...................... 13

*Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)............................... 18

*Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 758 P.2d 58, 61 (Cal. 1988) ............... 22

*Mut. Life Ins. Co. of N.Y. v. Phinney*, 178 U.S. 327, 328–42 (1900) ........................ 16

*O'Leary v. Herbert*, 55 P.2d 834, 837 (Cal. 1936) ........................................... 14

*Ohio Nat'l. Life Assurance Corp. v. Davis*, No. CV 10-4241 ODW MANX,

    2010 WL 4916643, at *2 (C.D. Cal. Dec. 1, 2010).............................. 2, 4

*Okura & Co. (America). v. Careau Group*, 783 F.Supp. 482 (C.D. Cal. 1991) ........ 11

*Penn Mutual Life Ins. Co. v. GreatBanc Trust Company et al.*,

    No. 09-C-06366, (N.D. Ill. June 8, 2012) ...................................... 5

*PHL Variable Ins. Co. v. Abrams*, No. 10-cv-521 BTM(NLS),

    2012 WL 10686 (S.D. Cal. Jan. 3, 2012) ........................................ 4, 5

*PHL Variable Ins. Co. v. Clifton Wright Family Insurance Trust*; No. CV 09-2344

    BTM, 2010 WL 1445186, at *1 (S.D. Cal. Apr. 12, 2010)............................ 5

*PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, ex rel. Christiana Bank &

    *Trust Co.*, 28 A.3d 1059 (Del. 2011)......................................... 3, 4, 20, 25

*PHL Variable Ins. Co. v. The Britt-Marie Johnson Family Ins. Trust*,

    Civ. No. 10-2370-VBF (MANx), (C. Dist. Cal. May 9, 2011).............................. 4

*PHL Variable Ins. Co. v. The Edwin Fuld Life Ins. Trust November 2007* ............. 5, 6

*PHL Variable Ins. Co. v. The Lucille E. Morello 2007 Irrevocable Trust*,

    645 F.3d 965 (8th Cir. 2011) ................................................. 5

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

*Preiser v. Newkirk,* 422 U.S. 395 (1975) .......................................................... 18

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*,

   774 F. Supp. 2d 674 (D. Del. 2011) ............................................................. 5

*Pruco Life Ins. Co. v. Brasner*, No. 10-80804-CIV-COHN,

   2011 WL 134056 (S.D. Fla. Jan. 7, 2011) ................................................ 3, 5

*R.R. Brittingham v. Mobil Corp.*, 943 F.2d 297 (3d Cir. 1991) ................................. 10

*Rae v. Union Bank*, 725 F.2d 478 (9th Cir. 1984) .............................................. 9

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268 (Cal. 2004) ............ 15, 18

*Sanders v. Apple Inc.*, 672 F.Supp.2d 978 (N.D. Cal. 2009) ..................................... 17

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) ............................ 11, 12

*Schaefer v. Aetna Life & Cas. Co.*, 910 F.Supp. 1095 (D. Md. 1996) ...................... 17

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992). ..................................... 9

*Skaling v. Aetna Ins. Co.*, 799 A.2d 997 (R.I. 2002) ................................................ 24

*Smiley v. Daimler Chrysler*, 538 F.Supp.2d 711 (D. Del. 2008) ............................... 18

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ....................................... 12, 13

*Streamcast Networks, Inc. v. IBIS LLC*, No.CV 05-04239 MMM,

   2006 WL 5720345, (C.D.Ca. May 2, 2006) ............................................ 21

*Sun Life Assurance Co. of Can. v. Berck*, 719 F. Supp. 2d 410 (D. Del. 2010) ........... 5

*Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,

   118 Cal.App.4th 1061 (Cal.Ct.App. 2004) ............................................. 22

*The John Hancock Life Ins. Co. v. Weijun Yu*, No. 2:10-cv-04822 [Doc. 43] (C.D.

   Cal. February 2, 2011) ............................................................................ 5

*TTSI Irrevocable Trust v. ReliaStar Life Ins.*,

   60 So.3d 1148 (Fla. Dist. Ct. App. 2011) ............................................... 5

*U.S. Bank, N.A. v. PHL Variable Ins. Co.*,

   Case No. 12-cv-0347 (C.D. Cal. Apr. 6, 2012) ...................................... 7

*Vokal v. U.S,.* 177 F.2d 619 (9th Cir. 1949) ........................................................... 16

*W. Reserve Life Assurance Co. of Ohio v. Conreal LLC*,

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

715 F.Supp.2d 270 (D.R.I. 2010) ............................................ 17

*Wallace v. Xerox Corp.*, No. 87C8810, 1988 WL 121622 (N.D. Ill. 1988) .............. 17

*Warnock v. Davis*, 104 U.S. 775 (1881) ........................................ 2

*Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787 (6th Cir. 2009) ...................... 5

### STATUTES

18 U.S.C. § 1341 .............................................................. 11, 13

18 U.S.C. § 1343 .............................................................. 11, 13

18 U.S.C. § 1961 ................................................................... 9

18 U.S.C. § 1962 .................................................... 9, 10, 13, 15

ARIZ. REV. STAT. ANN. § 20 ...................................................... 2

ARK. CODE ANN. § 23 ............................................................ 2

CAL. BUS. & PROF. CODE § 17200 ............................................... 22

CAL. INS. CODE § 280 ............................................................ 2

CAL. INS. CODE § 10110 .......................................................... 2

CAL. INS. CODE § 10113 .......................................................... 2

CAL. INS. CODE § 790 ........................................................... 23

COLO. REV. STAT. ANN. § 10 ...................................................... 2

CONN. GEN. STAT. ANN. § 38 .................................................. 2, 24

CONN. GEN. STAT. ANN. § 42. .................................................. 24

DEL. CODE ANN. tit. 18 § 2704. .................................................. 2

GA. CODE ANN. § 33 ............................................................. 2

HI. REV. STAT. § 431 ............................................................ 2

IDAHO CODE ANN. § 41 .......................................................... 2

ILL. COMP. STAT. ANN. 159/50 .................................................... 2

IND. CODE ANN. § 27 ............................................................ 2

IOWA CODE ANN. § 508 .......................................................... 2

KAN. STAT. ANN. 40 ............................................................. 2

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

KY. REV. STAT. ANN. § 304 ............................................................................ 2

LA. REV. STAT. ANN. § 22 .............................................................................. 2

ME. REV. STAT. ANN. tit. 24-A, § 6802-A .................................................... 2

MINN. STAT. ANN. § 60A.0782 ..................................................................... 2

N.D. CENT. CODE § 26.1-33.3-10 .................................................................. 2

N.H. REV. STAT. ANN. § 408-D:2 ................................................................. 2

N.Y. INS. LAW § 7815 .................................................................................... 2

NEB. REV. STAT. § 44-1110 ........................................................................... 2

OHIO REV. CODE ANN. § 3916.16 ................................................................. 2

OKLA. STAT. ANN. tit. 36, § 4055.2 .............................................................. 2

OR. REV. STAT. ANN. § 744.369 ................................................................... 2

R.I. GEN. LAWS ANN. § 27-72-2 ................................................................... 2

TENN. CODE ANN. § 56-50-102 ..................................................................... 2

UTAH CODE ANN. § 31A-36-113 ................................................................... 2

VT. STAT. ANN. tit. 8, § 3844 ....................................................................... 2

W. VA CODE ANN. § 33-J3C-1I ..................................................................... 2

## RULES

Fed. R. Civ. P. 9 ..................................................................................... 12, 15

## TREATISES

1A Cal. Jur. 3d Actions, § 89 (2012) ....................................................... 14

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# I.   INTRODUCTION

The Complaint is nothing more than a thinly veiled attempt by an undisclosed life settlement investor to lock in profits through an advisory opinion from this Court.  The Complaint is wholly reliant on the premise that Phoenix[1] formed a "secret intent" to deny claims when insureds die, then seek a judicial declaration that the policy in question is void, and finally to request judicial permission to retain policy premiums received.  Yet, the premise cannot sustain the claims asserted for three independent reasons:  1) no Policy insured has died; therefore, Plaintiffs[2] seek a mere advisory opinion as to what the parties' rights might be should a Policy be in force when its insured dies; 2) Phoenix has no control over whether a Policy is void for lack of insurable interest; insurable interest is measured at the time of issuance, which, as Plaintiffs concede, came and went years ago; and 3) Phoenix cannot, as a matter of law, incur civil liability for seeking judicial relief, especially when courts have repeatedly given Phoenix the very relief sought.

Here, the investors funding the Plaintiff trusts worry that they might have invested in a series of illegal life insurance transactions.  Fearful that the spotlight of judicial scrutiny may fall on what amounts to a wager on human life, Plaintiffs seek an advisory opinion from this Court that would, in essence, guarantee the profits that motivated their original investments.  For the reasons set forth below, Plaintiffs' claims are legally deficient and should be dismissed as a matter of law.

# II.   STRANGER ORIGINATED LIFE INSURANCE ("STOLI")

## A.   STOLI is illegal

In recent years, a demand for life insurance has developed in which high death benefit policies are procured on the lives of elderly Americans for re-sale to

---

[1] Wilmington Savings Fund Society ("WSFS"), as trustee of sixty trusts, has sued the Phoenix Companies, Inc. ("PNX"), its wholly owned subsidiary Phoenix Life Insurance Company ("PLIC"), and its indirectly wholly owned subsidiary PHL Variable Insurance Company ("PHL") (collectively "Phoenix").

[2] Each plaintiff trust owns a life insurance policy issued by PHL (the "Policies").

1

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

undisclosed investors.    These policies, known as "Stranger-Originated Life Insurance" (STOLI) policies, are illegal wagering contracts on the lives of elderly strangers, as the investor is betting that the insured dies before premium payments exceed the policy's death benefits.[3]   For the same reason that one cannot buy fire insurance on a random stranger's home, life insurance cannot be purchased on a stranger's life.   An insurable interest in the life of the insured at the time of policy issuance must exist.[4]

STOLI policies raise a variety of legal and public policy concerns and are illegal.   *See, e.g.*, *Grisby v. Russell*, 222 U.S. 149, 154–55 (1911); *Warnock v. Davis*, 104 U.S. 775, 779 (1881).   Numerous states, including California, concerned about the advent of STOLI policies, have codified insurable interest common law to explicitly address the illegal nature of these life insurance contracts.[5]  If a life insurance policy lacks insurable interest, the insurer cannot ratify the contract, as it is void, not voidable.[6]   The insurer can do nothing to change the contract's illegal nature.   For example, the Delaware Supreme Court recently analyzed Delaware's

---

[3]  *See, e.g., Ohio Nat'l. Life Assurance Corp. v. Davis*, No. CV 10-4241 ODW MANX, 2010 WL 4916643, at *2 (C.D. Cal. Dec. 1, 2010).

[4]  *See, e.g.,* DEL. CODE ANN. tit. 18, § 2704; CAL. INS. CODE §§ 280, 10110.

[5]  *See,* ARIZ. REV. STAT. ANN. § 20-443.02; ARK. CODE ANN. § 23-81-802; CAL. INS. CODE § 10113.1; COLO. REV. STAT. ANN. § 10-7-708; CONN. GEN. STAT. ANN. § 38a-465; GA. CODE ANN. § 33-59-2; HI. REV. STAT. § 431E-2; IDAHO CODE ANN. § 41-1951; ILL. COMP. STAT. ANN. 159/50; IND. CODE ANN. § 27-8-19.8-7.8; IOWA CODE ANN. § 508K.2; KAN. STAT. ANN. 40-5002; KY. REV. STAT. ANN. § 304-15-020; LA. REV. STAT. ANN. § 22:195; ME. REV. STAT. ANN. tit. 24-A, § 6802-A; MINN. STAT. ANN. § 60A.0782; NEB. REV. STAT. § 44-1110; N.H. REV. STAT. ANN. § 408-D:2; N.Y. INS. LAW § 7815; N.D. CENT. CODE § 26.1-33.3-10; OHIO REV. CODE ANN. § 3916.16; OKLA. STAT. ANN. tit. 36, § 4055.2; OR. REV. STAT. ANN. § 744.369; R.I. GEN. LAWS ANN. § 27-72-2; TENN. CODE ANN. § 56-50-102; UTAH CODE ANN. § 31A-36-113; VT. STAT. ANN. tit. 8, § 3844; W. VA CODE ANN. § 33-J3C-11.

[6]  Life insurance policies exist in one of three conditions: valid, voidable or void. Valid policies are those issued in compliance with applicable law.   A policy is voidable if it remains contestable and was issued based on a material misrepresentation; the insurer can either elect to rescind or ratify the contract.   A void policy, conversely, suffers an inherent and fundamental flaw and cannot be enforced as a matter of law.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

insurable interest law, which governs the plurality of the Policies.[7]   *See PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust, ex rel. Christiana Bank & Trust Co.*, 28 A.3d 1059 (Del. 2011), attached as Exhibit A.   The *Dawe* Court found that STOLI policies "lack an insurable interest and are thus an illegal wager on human life" and prohibited by Delaware law.   *Id.* at 1070–71.   Because the policies violate Delaware law, they are <u>void</u> and unenforceable, as distinguished from contracts <u>voidable</u> at the election of one of the parties.   *Id.* at 1067 ("A court may never enforce agreements void *ab initio,* no matter what the intentions of the parties.").

STOLI investors attempt to circumvent insurable interest laws by manipulating policy-related transactions to hide the fact that the policies are not being procured to satisfy legitimate insurance needs.   *Id.* at 1070.   To maximize their returns, STOLI investors also often misrepresent the health and financial status of the prospective insured, inducing the insurer to issue a policy on an individual that the STOLI investor believes has a shorter life expectancy than is indicated by the facts presented to the life insurer.   *See, e.g.*, *Pruco Life Ins. Co. v. Brasner*, No. 10-80804-CIV-COHN, 2011 WL 134056, at *1 (S.D. Fla. Jan. 7, 2011).   STOLI policies are typically procured through a trust, creating the appearance that the policy is being purchased for legitimate estate planning needs, but which, instead, provides a vehicle for secretly and illicitly transferring beneficial interests in the trust (and therefore, in the policy) to investors lacking an insurable interest.   *Id.*

**B.   STOLI Related Litigation**

STOLI is not a Phoenix specific issue.   It is an issue that highlights the tension between the life insurance industry and those secondary market participants who seek to abuse the insurance product and evade insurable interest laws.   STOLI fraud has resulted in extensive litigation, much of it initiated by insurers.   The litigation

---

[7] 20 policies were issued in Delaware, 16 in California, and the rest in Florida, Illinois, Massachusetts, Maryland, Pennsylvania, Rhode Island, and Texas.   Phoenix will cite to the common law of these jurisdictions where appropriate.

3

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

addresses two primary issues:  1) policy validity and 2) premium retention.  Though Plaintiffs characterize the litigation as "objectively baseless", courts have disagreed. Many courts, including courts in this State and in this District, have reaffirmed the strong public policy against wagering on human lives.

### 1.    Litigation addressing policy validity

STOLI litigation necessarily involves the question of whether the policy in question is valid or void.  Again, the Delaware Supreme Court's decision in *Dawe* is instructive.  The *Dawe* Court held that a life insurance policy "procured as a mere cover for a wager" violates Delaware's insurable interest requirement.  *Id.* at 1068, 1074.  Under Delaware law, insurable interest requires more than mere "technical compliance" and cannot be simply papered around.  *Id.* at 1078.  The *Dawe* Court concluded that a third-party cannot "use[] the insured as an instrumentality to procure the policy"  *Id.* at 1074.  "[I]f a third party financially induces the insured to procure a life insurance contract with the intent to immediately transfer the policy to a third party, the contract lacks an insurable interest."  *Id.* at 1075.  California has expressed similar concern for enforcing the insurable interest requirement.[8]

### 2.    Litigation addressing premium retention

Having declared a policy void for lack of insurable interest (or rescinded for material misrepresentations made in the application), courts must then decide

---

[8] *See* Court Order re: Britt-Marie Johnson Trust's Motion for Summary Judgment [Doc. 97], *PHL Variable Ins. Co. v. The Britt-Marie Johnson Family Ins. Trust*, No. 10-2370-VBF (MANx) (C. Dist. Cal. May 9, 2011) (finding that a triable issue existed on the issue of insurable interest, based on evidence of the investor's clandestine financing of premiums on "terms that virtually assured the Policy would be transferred to [the investor]"); *Ohio Nat'l*, 2010 WL 4916643, at *3 (concluding that "any arrangement by which a life insurance policy is initiated for the benefit of a 'third-party investor' who has no insurable interest in the insured's life at the time of the policy is issued is deemed a STOLI, which is a 'fraudulent life settlement act'"); *PHL Variable Ins. Co. v. Abrams*, No. 10CV521 BTM(NLS), 2012 WL 10686, at *4 (S.D. Cal. Jan. 3, 2012) (noting that while "an irrevocable trust normally has an insurable interest in the life of its settlor . . . if the trust is merely acting as a 'straw man' to carry out a STOLI scheme, that is a different matter"); *Lincoln Nat'l Life Ins. Co. v. Calhoun*, 596 F.Supp.2d 882, 890 (D.N.J. 2009).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

whether the insurer has to return to its defrauder the policy premiums. Here, again, Plaintiffs' rhetoric ignores judicial consideration of the issue. Some courts, including the Sixth and Eighth Circuit Courts of Appeal, have found that an insurer may retain the premiums paid on a policy it was induced to issue through fraud – to do otherwise would incentivize fraud by making the defrauder whole should the fraud be discovered.[9]   Other courts recognize that a defrauded insurer may have suffered damages beyond the mere issuance of the policy, including the payment of commissions to the broker who sold the policy. These courts allow the insurer to offset proven damages against the premiums to be returned.[10]   Finally, if a policy is void for lack of insurable interest, courts recognize that judicial authority can only be exercised to void the contract. In effect, courts void the contract and leave the parties where it finds them.[11]

---

[9] *See PHL Variable Ins. Co. v. The Lucille E. Morello 2007 Irrevocable Trust*, 645 F.3d 965, 969 (8th Cir. 2011) (denying the return of premiums to a life insurance policy owner who procured the policy by fraud); *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 797 (6th Cir. 2009) (refusing to permit a party with unclean hands to recover premiums).

[10] *See PHL Variable Ins. Co. v. Clifton Wright Family Ins. Trust*; No. CV 09-2344 BTM, 2010 WL 1445186, at *1 (S.D. Cal. Apr. 12, 2010) (permitting insurer to seek offset because "primary purpose of rescission is to 'restore both parties to their former positions as far as possible' and 'to that end [the court] may grant any monetary relief necessary to do so'"); *Abrams*, 2012 WL 10686, at *6 (affirming holding of *Clifton Wright*); *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 774 F. Supp. 2d 674, 682–83 (D. Del. 2011); *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 564–65 (D. Del. 2010); *Sun Life Assurance Co. of Can. v. Berck*, 719 F. Supp. 2d 410, 419 (D. Del. 2010); Order Denying Motion to Strike, *PHL Variable Ins. Co. v. The Edwin Fuld Life Ins. Trust November 2007*, No. 09-cv-01222-MMH-JRK [Doc. 33] (M.D. Fla. Aug. 10, 2010) (permitting insurer to pursue offset of damages against premiums).

[11] *See* Memorandum Opinion and Order, *Penn. Mut. Life Ins. Co. v. GreatBanc Trust Company et al.*, No. 09-C-06366, (N.D. Ill. June 8, 2012) (finding that a STOLI contract, being based on illegal subject matter, is void, cannot be enforced, and requires the court to leave the parties in their current positions); *TTSI Irrevocable Trust v. ReliaStar Life Ins. Co.*, 60 So.3d 1148, 1150 (Fla. Dist. Ct. App. 2011) (leaving the parties as the court found them by declining to enforce a STOLI policy that was void as contrary to public policy); *Brasner*, 2011 WL 134056, at *7–8 (declining to dismiss request to retain premium after noting that courts had permitted insurers to seek to retain premiums where a policy is void); Judgment, *The John Hancock Life Ins. Co. v. Weijun Yu*, No. 2:10-cv-04822 [Doc. 43] (C.D. Cal. February 2, 2011) (holding that the insurer was entitled to retain the premiums paid on a policy that was voided for lack of insurable interest).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

It is against this backdrop of "objectively baseless" litigation that one must consider Plaintiffs' allegation that Phoenix is an illegal enterprise using the courts as an instrument to effectuate its supposedly criminal and/or fraudulent scheme.

### III.   BACKGROUND

### A.   The Policies

Plaintiffs offer few allegations regarding the Policies' origins.  Plaintiffs are 60 separate Delaware trusts, each designated as owner and beneficiary of a policy issued by PHL between August 2006 and May 2008.  Compl. ¶¶ 3, 67, 68; Civil Cover Sheet, ¶ IX(a).  WSFS is the current trustee of each trust, though it was not the trustee at the time the Policies were issued.  Compl. ¶¶ 67, 81.  Plaintiffs allege that at some point after Policy issuance, an unidentified investor purchased the beneficial interest in each trust.  *Id.* at ¶ 80.  Although Plaintiffs spill much ink purporting to document Phoenix's alleged consent to the issuance of STOLI policies, Plaintiffs do not allege that they actually made Phoenix aware that such a transaction had occurred.  *Id.* at ¶¶ 32–65, 75–76.  Plaintiffs contend that the Policies are valid and were issued in compliance with applicable law.  *Id.* at ¶¶ 67, 218.

Prior to the filing of this action, PHL initiated separate actions against three of the plaintiff trusts in the United States District Court for the District of Delaware (the "Delaware Cases"), seeking a declaration that the policies owned by the three trusts are void for lack of insurable interest.[12]  The insureds under each policy are very much alive.  PHL is not alleged to have taken any action to challenge the remaining policies owned by the other 57 plaintiff trusts (the "In Force Policies").

### B.   Phoenix's Alleged Wrongdoing

---

[12] *See* Complaint, *PHL Variable Life Ins. Co. v. The Edwin Fuld Life Ins. Trust [John Doe Trust 1]*, Civil Action No. 1:12-CV-313-RGA (D. Del. March 15, 2012), attached as Exhibit B; Complaint, *PHL Variable Ins. Co. v. The Chong Son Pak Life Ins. Trust [John Doe Trust 20]*, Civil Action No. 1:12-CV-314-RGA (D. Del. March 15, 2012) , attached as Exhibit C; Complaint, *PHL Variable Ins. Co. v. The Virginia L. Lankow Life Ins. Trust [Jane Doe Trust 43]*, Civil Action No. 1:12-CV-315-RGA (D. Del. March 15, 2012), attached as Exhibit D; Compl. ¶¶ 6, 100, 101, 114, 131.

6

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiffs allege that PNX, a Delaware holding company, and two subsidiaries, Connecticut domesticated insurer PHL, and New York domesticated insurer PLIC, conspired to defraud Plaintiffs by forming a "secret intent" to deny death claims on Policies due to a lack an insurable interest, and continuing to issue routine correspondence noting the Policies to be in-force.  *See* Compl. ¶¶ 2, 12, 91, 116, 126, 186, 196.  As evidence of this allegedly "secret" intent, Plaintiffs point to a number of lawsuits filed by or against Phoenix, in which Phoenix has contended that certain specific insurance policies are void due to lack of insurable interest or voidable due to material misrepresentation on the application.  *Id.* at ¶ 4, 98.  The overwhelming majority of these lawsuits involve insureds who are still alive.[13]

Plaintiffs contend that, having formed this "secret intent' to deny future claims, PHL continued to send routine correspondence, such as premium notices and annual policy summaries.  *See* Compl. ¶¶ 116, 117, 126, 188.  While not actionable fraud, Plaintiffs assert that this correspondence constitutes predicate criminal acts supporting a RICO claim.  *Id.* at ¶ 187–88.  The alleged RICO enterprise is Phoenix's Life and Annuities division, collectively encompassed by the three named corporate defendants, two of which (PHL and PLIC) are simply subsidiaries of the third (PNX).  *Id.* at ¶ 165.  As Plaintiffs do not allege that PLIC or PNX have anything to do with the PHL Policies, it is obvious they are named merely to create the illusion of a RICO enterprise.

Plaintiffs' RICO claim, and by extension their fraud and conspiracy claims, is fatally flawed because of the failure to:  1) plead the required distinctiveness of the RICO enterprise from the corporate defendants; 2) allege the occurrence of predicate

---

[13] Of the 14 cases brought by Phoenix cited in paragraph 98, only 1 was brought after the insured's death.  In one of the two cases brought against Phoenix cited in paragraph 98, Phoenix sought to interplead the policy's death benefits and judicially admitted the policy was payable.  *See* Counterclaim and Third-Party Complaint in Interpleader, *U.S. Bank, N.A. v. PHL Variable Ins. Co.*, Case No. 12-CV-0347 (C.D. Cal. Apr. 6, 2012) [Doc. 13].  Of the five cases cited in paragraph 100, only 1— *Dawe*—involves a death.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

criminal conduct; and 3) allege that Plaintiffs have suffered damages proximately caused by the RICO enterprise.  Moreover, even though no factual allegations are made to support the existence of any "secret intent," the allegation is completely irrelevant.  Nothing that Phoenix does today impacts whether an insurable interest existed at the time of each Policy's issuance.  Either it existed or it did not.  Phoenix cannot be held liable for RICO, fraud, or any other cause of action, for simply requesting that a court assess whether a contract is illegal.  Additionally, as none of the insureds has died, Plaintiffs have suffered no damages.

Plaintiffs also ask for a declaration that the Policies are valid and that, in the event that a court ever declares one of the policies void, that Phoenix must return premiums paid on the Policies.[14]  Yet, no claim has been submitted, no claim has been denied, and no insured has died.  Thus, no justiciable controversy exists. Plaintiffs seek nothing more than an advisory opinion from this Court.

The very essence of Plaintiffs' Complaint is that Phoenix has utilized courts to seek adjudication of disputes or questions of law involving unrelated policies, and that the market fears that Phoenix may do the same with respect to these Policies. *See* Compl. ¶¶ 98, 107–08.  It is nothing short of absurd to contend that Phoenix is somehow liable on any legal theory (much less RICO) for having previously sought redress through the courts.  Concerned that the Policies may be perceived as STOLI by the market, Plaintiffs look to this Court to issue an advisory opinion that would serve no purpose but to allow the investors to lock in their profits.

## IV.   ARGUMENT

**A.   Plaintiff's Rico Claim Fails**

      1.   <u>The alleged RICO enterprise is not distinct from defendants</u>

---

[14] With respect to the three trusts that are defendants in the Delaware Cases, the trusts impermissively seek to pursue a declaration here for the diametric opposite relief sought by Phoenix in Delaware.  Indeed, all of the claims asserted by the three trusts here are compulsory counter-claims and should be raised in the Delaware Cases.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

1    Plaintiffs allege a civil RICO claim under 18 U.S.C. § 1962(c).  The RICO

2    statute defines "enterprise" as "any individual, partnership, corporation, association,

3    or other legal entity, and as any union or group of individuals associated in fact

4    although not a legal entity."   18 U.S.C. § 1961(3)-(4).   The Ninth Circuit requires

5    distinctiveness between the person and the enterprise to state a claim under U.S.C.

6    § 1962(c).  *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) ("We conclude

7    that 'enterprise' was meant to refer to a being different from, not the same as or part

8    of the person whose behavior the act was designed to prohibit . . . ") (citation

9    omitted).  The Ninth Circuit applied this reasoning to corporate defendants in *Sever*

10   *v. Alaska Pulp Corp.*, holding that "for the purposes of a single action, a corporate

11   defendant cannot be both the RICO person and the RICO enterprise under section

12   1962(c)."  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992).

13   The  Ninth  Circuit  and  several  other  Circuits  have  held  that  corporate

14   subsidiaries are not distinct from their corporate parents for RICO purposes.  *See*

15   *Chagby v Target Corp.*, 358 Fed. App'x. 805, 808 (9th Cir. 2009) (holding that

16   theory that a RICO enterprise existed between a corporation and its wholly-owned

17   subsidiaries failed to meet the distinctiveness requirements of civil RICO claims)

18   (citing *Living Designs Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th

19   Cir. 2005)).[15]

20   District Courts within the Ninth Circuit routinely dismiss RICO claims due to

21   a lack of distinctiveness among parent and subsidiary corporations.  For instance, the

22   Southern District of California explained that although parents and subsidiaries are

23   separate legal entities, "a subsidiary that simply conducts its affairs as delegated by

24   the parent company for the profit of the parent company is engaged in nothing more

25

26   [15] *See Bucklew v. Hawkins, Ash, Baptie & Co.,* 329 F.3d 923, 934 (7th Cir. 2003);
     *Bessette v Avco Fin. Servs, Inc.*, 230 F.3d 439, 449 (1st Cir. 2000); *Fogie v. THORN*
27   *Americas, Inc.*, 190 F.3d 889, 898 (8th Cir. 1999); *Brannon v. Boatmen's First Nat'l*
     *Bank*, 153 F.3d 1144, 1147 (10th Cir. 1998); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1412
28   (3d Cir. 1993).

9

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

than a legitimate corporate and financial relationship, which is certainly not subject to RICO liability on that basis alone." *In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*, 601 F.Supp.2d 1201, 1214 (S.D. Cal. 2009) (quoting *Bessette,* 230 F.3d at 449).  The court stated that "something more" is required to satisfy the distinctiveness requirement.  *Id.* (citing *Bucklew*, 329 F.3d at 934). Similarly, in *Lee v. Gen. Nutrition Cos.,* the plaintiff alleged an association-in-fact enterprise consisting of "a corporate defendant, its affiliates, and two of its officers . . . ." *Lee v. Gen. Nutrition Cos.,* No. CV 00-13550LGB(AJWX), 2001 WL 34032651, at *14 (C.D. Cal. Nov. 26, 2001).  Judge Baird held that "each of the persons pled operated within a unified corporate structure and were guided by a single corporate consciousness" and consequently, plaintiff "failed to allege an enterprise distinct from any of the persons pled and as such, have failed to state a claim under Section 1962(c)." *Id.*  Finally, following a line of Seventh Circuit cases authored by Judge Posner, the District Court of Oregon found that "[i]t is not enough that the enterprise and the person play distinct roles. Instead, the person must control the enterprise in some way." *Bodtker v. Forest City Trading Group*, No. CV-99-533-ST, 1999 WL 778583, at *9 (D. Or. Oct. 1, 1999).  The court noted that although the Ninth Circuit had not specifically addressed the issue, "other courts have held that because a parent corporation legitimately controls the day-to-day activities of its subsidiary, a §1962(c) claim generally is not actionable if the parent is the alleged RICO person and its subsidiary is the alleged RICO enterprise." *Id.* at 6 (citing *R.R. Brittingham v. Mobil Corp.*, 943 F.2d 297, 301 (3d Cir. 1991)).  The court dismissed the claim, finding that "[the parent company] and its subsidiaries are in reality indistinguishable from one another . . . . Absent an allegation substantiating the critical element of control of [the parent company] by the subsidiaries, plaintiffs fail to state a claim against the subsidiaries under § 1962(c)." *Id.* at 12.

Here, Plaintiffs attempt to manufacture a civil RICO claim out of thin air. PHL issued all sixty Policies and, according to Plaintiffs, committed mail and wire

10

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

fraud in connection with same.  *See* Compl. ¶¶ 66, 127, 130, 184.  Under Ninth Circuit law, Plaintiffs could not sue PHL as both the enterprise and a defendant, so Plaintiffs allege that PNX and its wholly owned subsidiaries PLIC and PHL collectively constitute the enterprise.  As shown, merely grouping together a parent company and its subsidiaries does not change the fact that the requisite distinctiveness is not present.  Additionally, Plaintiffs do not aid their charade by asserting that the enterprise is the "Life & Annuity" division of Phoenix—a company that basically does nothing but sell life insurance and annuities.

2.     No predicate criminal conduct is alleged

Plaintiffs allege that the predicate crimes supporting their civil RICO claims are wire and mail fraud under 18 U.S.C. §§ 1341 and 1343.  These statutes require: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud.  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010); *Okura & Co. (America). v. Careau Group*, 783 F.Supp. 482, 503 (C.D. Cal. 1991) (stating that to establish the predicate act of mail fraud necessary to support a RICO claim, plaintiff must show a scheme or artifice to defraud as well as damages proximately caused by the alleged misconduct).  The gravamen of the offense is the scheme to defraud.  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008).  Here, the alleged scheme to defraud relies on Plaintiffs' contention that PHL, having formed a "secret intent" to deny future claims, continued to send, by mail or fax, routine correspondence such as premium notices, annual policy summaries, and policy illustrations.  *See* Compl. ¶¶ 118, 122, 126–27.

Certain of the notices, summaries, illustrations and other documents cited in the Complaint note that the Policies were in force.  *See* exemplar set of documents for John Doe Trust 5, attached as Exhibits E–I.  Plaintiffs allege that these communications were fraudulent because Plaintiffs apparently interpreted them to imply that, to PHL's knowledge, the Policies in question were valid and that PHL

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

had no plan to challenge them.  In addition to the fact that this is clearly not what is expressed in the written communications, the argument fails for two reasons.  First, whether the policies are valid is a question of law.  Either an insurable interest existed at the time of each Policies' issuance or it did not.  Phoenix cannot misrepresent how a hypothetical court would rule if it considered a certain set of facts.  "It is well established . . . that misrepresentations of law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions and may not be relied upon . . . ."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006).

Second, when mail or wire fraud is alleged as predicate acts, a plaintiff must meet the heightened pleading standards under rule 9(b).  *Sanford*, 625 F.3d at 557–58; Fed. R. Civ. P. 9(b).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . .so that they can defend against the charge and not just deny that they have done nothing wrong."  *Id.* at 558.  Underlying Plaintiffs' theory is that when these routine communications were generated, PHL was fraudulently concealing a "secret intent" to deny any death claims asserted against the Policies.  *See* Compl. ¶¶ 2, 12, 91, 116, 126, 186, 196.  Plaintiffs however, have made no factual allegations as to who formulated this plan, when it was formulated, the details of the plan, or how Plaintiffs discovered the concealment.  Other than alleging PHL issued routine correspondence, Plaintiffs make no express allegations as to what wrongful actions the particular defendants are alleged to have taken in formulating and carrying out this alleged secret plan.  These allegations are pure speculation and do not satisfy Rule 9(b)'s heightened pleading standards with respect to the mail and wire fraud claims upon which Plaintiffs' predicate their RICO claim.

Moreover, the Complaint is unclear as to the particular misconduct alleged. Plaintiffs do not allege that Phoenix has denied a death claim on any of the Policies. To the contrary, Phoenix has sought a declaration that the three Delaware Case

12

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Policies are void for lack of insurable interest while the insureds are still alive. *See* Exs. B–D. Plaintiffs also do not allege that any of the Policies are, in fact, void or unenforceable for lack of insurable interest. Nor do Plaintiffs allege that Phoenix has concealed any facts from Plaintiffs that would establish that the Policies are void or unenforceable for lack of insurable interest.

No action by Phoenix can change whether any of the Policies are void. If the Policies are void, Phoenix cannot be liable for the declaration by a court to that effect; if they are not, Phoenix must abide by the policy terms and Plaintiffs can bring a claim if Phoenix breaches the contract. What Plaintiffs cannot do is assert a RICO claim based on their unsubstantiated belief that Phoenix may presently intend to seek a declaration from a court or breach a contract at some point in the future.

Since Plaintiffs fail to properly allege the predicate crimes of wire and mail fraud under 18 U.S.C. §§ 1341 and 1343, they fail to state a claim under § 1962(c).

3.    Plaintiffs fail to plead proximately caused damages

"It is well settled that, to maintain a civil RICO claim predicated on mail [or wire] fraud, a plaintiff must show that the defendants' alleged misconduct proximately caused the injury." *Sosa*, 437 F.3d at 941; *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). This requires a "direct relation" between the conduct alleged and the injury asserted. *Holmes*, 503 U.S. at 269–70. "[A] civil RICO plaintiff may not obtain recovery on the sole basis that his injuries were the foreseeable, or even the intended, consequence of a violation of substantive RICO." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F.Supp.2d 911, 1024 (2011).

Plaintiffs assert that Phoenix's scheme induced them to pay premiums on Policies on which Phoenix will not willingly pay claims or refund premiums. Compl. ¶ 186. To the extent Phoenix denies a claim that they were legally obligated to pay, it will be Phoenix's breach of contract that causes Plaintiffs' damages. *See Encarnacao v. Phase Forward Inc.*, No. CV-11-05090 ODW (PLA), 2012 WL 404971, at *4 (C.D. Ca. Feb. 7, 2012). Of course, since none of the insureds have

13

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

died, this is entirely speculative.  Unless and until a breach occurs, Plaintiffs have not suffered damages.

Additionally, Plaintiffs allege that they relied on the misrepresentations in the Phoenix correspondence in deciding to pay premiums.  Compl. ¶ 121.  However, with respect to each Policy, the first allegedly false correspondence was sent approximately two years after the corresponding Policy was issued.  *Id.* at ¶ 126.  Plaintiffs do not allege what amount, if any, of premium was paid after the alleged misrepresentations.  As such, Plaintiffs have failed to allege actual damages.

Moreover, with respect to the Delaware Case Policies, and in the event Phoenix seeks a declaration that any of the In Force Policies are void, once a court adjudicates that the policies are void, at that point the court may direct the disposition of the relevant premiums in accordance with applicable law.  If that happens, Plaintiffs cannot claim be legally damaged by a court's action.  Under the common law doctrine of *damnum absque injuria*, legal adjudications cannot serve as a basis for tort liability against Phoenix.  *O'Leary v. Herbert*, 55 P.2d 834, 837 (Cal. 1936) ("No cause of action arises from the doing of a lawful act of the exercise of a legal right if done or exercised in a lawful manner, the resulting damage, if any, being damnum absque injuria.") (citiation omitted).  A person simply cannot be liable for merely exercising their legal rights.  *Id.; see also* 1A Cal. Jur. 3d Actions, § 89 (2012) ("no cause of action arises from the doing of a lawful act or the exercise of a legal right in a lawful or proper manner, for any resulting damage is damage without wrong.").

Any claim that the market's devaluation of the Policies is caused by Phoenix's secret intent is a vassal argument.  Plaintiffs contracted with Phoenix for insurance coverage, not for an assurance as to the market value of the Policies.  Phoenix is not a guarantor of secondary market value, and is not alleged to have any obligation to support the Policies' value on the secondary market. Phoenix's alleged secret plan, not disclosed to anyone nor affirmatively represented to Plaintiffs, simply could not

14

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

proximately cause any injury, and the assertion that it could is far too nebulous to be a proximate cause of any fluctuation within the market.

Finally, whether it relates to paying premiums or the market's valuation of the Policies, to the extent that Plaintiffs' damages stand and fall based on whether the Policies are void or valid, their "damages" are caused not by Phoenix, but by the inherent legal condition of the Policies themselves.

### 4.   Plaintiffs fail to state a RICO conspiracy claim

A civil RICO conspiracy under § 1962(d) fails where, as here, Plaintiffs do not state a claim upon which relief could be granted under § 1962(c).  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

## B.   Plaintiff's Fraud and Conspiracy Claims Fail

### 1.   Plaintiffs' fraud allegations fail to satisfy Rule 9

As with their mail fraud claims, Plaintiffs fail to satisfy Rule 9's particularity requirement, which applies equally to claims of fraud and fraudulent concealment. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F.Supp.2d 1145, 1190 (C.D. Cal. 2010) (noting that claims for fraudulent concealment must be pled with the requisite particularity under Rule 9(b)).

### 2.   Plaintiffs fail to state a cause of action for fraud

As Plaintiffs' allegations fail to state a cause of action for mail and wire fraud, they necessarily fail to state a claim for common law fraud, which requires an intent to defraud, false representation, reasonable reliance and proximately caused damages. *See, e.g.*, *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004); *Greenstar, LLC v. Heller*, 814 F.Supp.2d 444, 452 (D. Del. 2011). Plaintiffs allege that in premium notices, annual statements, illustrations, and verifications of coverage that PHL falsely "represented to Plaintiffs that [PHL] considered the Policies to be valid and in good standing".  Compl. ¶¶ 117–23, 208–13. Setting aside that, at most, these documents state that the Policies are presently

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

in force, there would be no actionable misrepresentation even if Plaintiffs' interpretation of the documents was reasonable.

First, as Plaintiffs do not contend that when Phoenix sent this correspondence that any of the Policies were not actually in force, it appears that Plaintiffs are alleging that Phoenix misrepresented <u>Phoenix's belief</u> concerning the Policies' validity. This is the very definition of a non-actionable legal opinion. *See Mut. Life Ins. Co. of N.Y. v. Phinney*, 178 U.S. 327, 328–42 (1900) (statement by insurance agent that policy had lapsed where, under applicable New York statute it had not, could not form basis of fraud claim because parties are "presumed, as a matter of law, to know [statutes'] legal effect and operation").[16]

Moreover, if the Policies are, in fact, void for lack of insurable interest, then Plaintiffs are the parties that have procured such illegal contracts. If that is the case, then their claim is that Phoenix discovered that Plaintiffs were unlawfully gambling on the life of an insured, but did not immediately confront Plaintiffs in order to profit from Plaintiffs' illegal conduct. Even if this were what Plaintiffs alleged, it would not be actionable fraud on Phoenix's part.

### 3. Plaintiffs fail to state a fraudulent concealment claim

Plaintiffs also allege that Phoenix fraudulently concealed the plan to refuse to pay hypothetical claims under the Policies. *See* Compl. ¶¶ 2, 12, 91, 116, 126, 186, 196. Plaintiffs couch this as a fraud claim, but it is, at best, either a representation regarding future performance or a claim for anticipatory repudiation of a contract. Representations regarding future performance are non-actionable. *See, e.g., Grunstein v. Silva*, No. 3932-VCN, 2009 WL 4698541, at *13 (Del. Ch. Dec. 8,

---

[16] *Commercial Credit Corp. v. Sorgel*, 274 F.2d 449, 453 (5th Cir. 1960) (general rule is that legal opinions are not actionable in fraud); *Vokal v. U.S.*, 177 F.2d 619, 625 (9th Cir. 1949) (both parties to a contract are presumed to know the law; there is no presumption of ignorance on one side and knowledge on the other); *City of Aurora v. Green*, 467 N.E.2d 610, 613 (1984) (same); *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F.Supp. 825, 829 (S.D. Fla. 1996).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

2009).   Moreover, Plaintiffs do not allege facts establishing the central element of a fraudulent concealment claim—a duty of disclosure obligating Phoenix to disclose any alleged secret intent to deny death claims.   *See, e.g.*, *Chiarella v. U.S.*, 445 U.S. 222, 227–28 (1980) ("There must be a duty to disclose, however, for there to be a claim of fraud for failure to disclose); *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 985 (N.D. Cal. 2009).   In conclusory fashion, Plaintiffs assert that Phoenix has an obligation to disclose to a policyholder that a policy is void or unenforceable.   *See* Compl. ¶ 189.   As noted above, Plaintiffs do not allege that any of the Policies are, in fact, void or unenforceable and Plaintiffs do not allege that Phoenix concealed any facts that would establish such was the case.

Further, courts do not permit tort recovery for a breach of contract, reasoning that such expansive recovery would unjustifiably burden business interests.   *Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 77, 17 Cal. Rptr. 2d 649 (Cal. Ct. App. 1993) ("The restrictions on contract remedies . . . protect the parties' freedom to bargain over special risks and they promote contract formation by limiting liability to the value of the promise."); *Foley v. Interactive Data Corp.*, 765 P.2d 373, 409, n.8 (Cal. 1988) (J. Broussard, concurring and dissenting) ("A party who can calculate damages can determine whether he can profit by breaching his contract, accepting liability in return for the benefits of the breach [which is ] appropriate in a commercial context."); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) ("Where, however, the plaintiff's claim arises solely from a breach of contract, the plaintiff 'generally must sue in contract, and not in tort.'"). [17]

---

[17] *See Flying J Inc. v. Meda, Inc.*, No. 04-08-00169-CV, 2012 WL 1707897, at *3 (Tex. App.—San Antonio May 16, 2012); *Cornell Glasgow, LLC v. La Grange Props., LLC*, No. N11C-05-016, 2012 WL 2106945, at *8 (D. Super. Ct. June 6, 2012) (collecting cases); *Harbor Hosp. Servs., Inc. v. Gem Laundry Servs., LLC*, No. 4830 JULY TERM 2000, 0207 AUG. TERM 2000, 2001 WL 1808556, at *4 (Pa. Com. Pl. July 18, 2001) (citation omitted); *Jones v. Hyatt Ins. Agency*, 741 A.2d 1099, 1107 (Md. 1999); *Karn v. Coldwell Banker Res. Real Estate, Inc.*, 705 So. 2d 680, 680 (Fla. App. 1998) (citation omitted); *Schaefer v. Aetna Life & Cas. Co.*, 910 F.Supp. 1095, 1100–01 (D. Md. 1996); *Wallace v. Xerox Corp.*, No. 87C8810, 1988

17

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Thus, "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 981 P.2d 978, 983 (Cal. 1999). While a tort claim may arise when a breach is accompanied by fraud or conversion, such conduct must result in "personal damages independent of the plaintiff's economic loss" in order to be actionable. *Robinson Helicopter Co.,* 102 P.3d at 276. Here, Plaintiffs allege no non-economic losses in connection with their fraud claim and, indeed, they have none. Thus, they have not alleged a cognizable tort. To the extent Phoenix intends to—and actually does—breach the Policies, Plaintiffs are limited to contract remedies.

4.    Plaintiffs fail to state a conspiracy claim

Plaintiffs allege civil conspiracy against the Defendants in connection with their fraud claim. Compl. ¶¶ 214–15. The existence of an underlying tort is an element of civil conspiracy. *See Doctors' Co. v. Superior Court,* 49 Cal.3d 39, 44, 775 P.2d 508 (1989); *Smiley v. Daimler Chrysler*, 538 F.Supp.2d 711, 718 (D. Del. 2008) ("Civil conspiracy, standing alone, is not an independent cause of action. *Id.* There must be some underlying actionable tort by each individual defendant in order to obtain recovery on a civil conspiracy theory."). Since Plaintiffs fail to state a fraud claim, they likewise fail to state a civil conspiracy claim. In addition, Plaintiffs fail to adequately plead civil conspiracy because a corporation cannot conspire with itself, and by extension, with its wholly owned subsidiaries. *See Cornell Glasgow*, 2012 WL 2106945, at *11.

C.    **Plaintiffs are not Entitled to a Declaratory Judgment**

1.    Plaintiffs improperly seek an advisory opinion

Federal courts may not render advisory opinions. *Preiser v. Newkirk,* 422

WL 121622, at *4 (N.D. Ill. 1988) (citation omitted); *see also W. Reserve Life Assurance Co. of Ohio v. Conreal LLC*, 715 F.Supp.2d 270, 289–90 (D.R.I. 2010) (citation omitted).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

1  U.S. 395, 401 (1975) (references omitted); *see also Medimmune, Inc. v. Genentech,*

2  *Inc.*, 549 U.S. 118, 127 (2007) (references omitted) ("there [must be] a substantial

3  controversy, between parties having adverse legal interests, of sufficient immediacy

4  and reality to warrant the issuance of a declaratory judgment."). With respect to the

5  In Force Policies, Plaintiffs' Complaint provides the textbook example of a request

6  for an advisory opinion, as Plaintiffs do not allege that PHL has taken or threatened

7  any action with respect to the In Force Policies.  Instead, Plaintiffs allege only that

8  PHL has a secret intent to do so in the future and on that basis alone seek a

9  declaration that the Policies are "in full force and effect" and that "if PHL is

10  successful in rescinding or voiding any of the Policies, it must return all premiums

11  paid for any Policy which is voided or rescinded . . . ."  Compl. ¶¶ 224, 226.

12      Plaintiffs apparently contend a justiciable controversy exists because the

13  "market" lacks confidence that Phoenix will pay benefits when a death occurs.  *See*

14  *id.* ¶ 107–09.  The "market," whatever that is, is not alleged to have formed this

15  belief based on any action taken by Phoenix regarding the Policies; rather, the

16  "market" is alleged to have formed this opinion based upon Phoenix's involvement

17  in litigation in other contexts involving other parties.  Through no fault of Phoenix,

18  the "market" apparently treats as toxic life insurance policies potentially procured as

19  illegal wagering contracts, because such contracts are void.

20      Transparently, and without articulating any actual dispute, Plaintiffs request

21  that the Court provide the "market" with assurance, in the form of a judicial

22  guaranty, that Plaintiffs' potentially toxic assets are actually worth Plaintiffs' asking

23  price.  If courts issued such advisory opinions, litigants would flood courts with

24  hypothetical scenarios every time they felt the "market" was undervaluing assets for

25  fear of a hypothetical future event.  The Constitution and the Declaratory Judgment

26  Act, however, require an actual, justiciable controversy before issuance of

27  declaratory judgments and do not permit courts to assume the role of the market's

28  playground monitor.  "While certainty regarding business transactions may be a

19

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

legitimate goal, there would be no ripeness requirement left if a plaintiff could sue whenever it was concerned about its potential liability for past transactions. Businessmen and others must live with their considered choices" *See Cities Serv. Co. v. Department of Energy*, 520 F. Supp. 1132, 1137-38 (D. Del. 1981).

2.   Plaintiffs fail to allege facts establishing Policies' validity

Even if the Court entertained Plaintiffs' request for a declaration that the Policies are valid, Plaintiffs have failed to set forth facts that, if true, would establish that any of the Policies were issued with a valid insurable interest.

In support of their claim for declaratory relief, Plaintiffs assert only that the insureds established the trusts to which the Policies were issued, that each trust's initial beneficiary was an insured's family member, and that the beneficial interests in these trusts were sold to unidentified investors after the policies were issued. These allegations, even if true, are insufficient to determine the existence of an insurable interest.   Delaware law, which governs a plurality of the Policies and is consistent with every states' law implicated in this case, is illustrative.   In *Dawe*, the Delaware Supreme Court charged courts with "scrutiniz[ing] the circumstances under which the policy was issued" when examining whether an insurable interest exists, including who was ultimately responsible for the initial premiums.   *Dawe*, 28 A.3d at 1076.   The *Dawe* Court also held that a "bona fide insurance policy sale or assignment requires that the insured take out the policy in good faith-not as a cover for a wagering contract."   *Id.*

Despite a 113-page Complaint, Plaintiffs fail to allege the information critical to a court's examination of insurable interest.   For instance, Plaintiffs do not allege the initial premium was paid by each insured, on what dates were the beneficial interest transfer agreements initiated and completed, how much was paid in consideration for those transfers, and whether the insured was reimbursed for premiums fronted. Plaintiffs fail to make any allegations that the Policies were sought for legitimate insurance purposes or were obtained as part of a bona fide

20

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

transaction.  Instead, Plaintiffs provide the Court only with conclusory allegations.

3.   Plaintiffs' declaratory judgment claims are redundant

With respect to the plaintiff trusts who are defendants in the Delaware Cases, their claims are the functional equivalent of counterclaims to the claims asserted by Phoenix in the Delaware Cases.  A counterclaim for declaratory relief may be dismissed as redundant where a complete identity of factual and legal issues exists between the complaint and the counterclaim.  *See Englewood Lending Inc. v. G & G Coachella Invs.,* LLC, 651 F.Supp.2d 1141, 1145 (C.D. Cal. 2009).  In the Delaware Cases, Phoenix seeks declarations that the three Policies at issue are void due to lack of insurable interest and that therefore no death benefits are payable.  *See* Exs. B–D. Through its Complaint here, these trusts seek a declaration that the same three Policies are valid and that death benefits must be paid.  *See* Compl. ¶224. The validity of the Policies at issue in the Delaware Cases will necessarily be determined by the court when adjudicating Phoenix's declaratory judgment claim.  The Policies are either valid or void.  Plaintiffs' claims for a declaratory judgment on these Policies should be dismissed as redundant.

Moreover, Plaintiffs seek a declaration that PHL improperly raised the Policies' cost of insurance charges and must reduce the charges and pay Plaintiffs damages.  *Id*. at ¶ 225.  The declaration sought is a mere repackaging of Plaintiffs' breach of contract claim.  *Id.* at ¶¶ 228–237.  Federal courts routinely dismiss declaratory judgment claims that are redundant of a breach of contract claim. *Streamcast Networks, Inc. v. IBIS LLC*, No.CV 05-04239 MMM, 2006 WL 5720345, at *4 (C.D.Ca. May 2, 2006).

4.   The Court should decline to exercise jurisdiction

Even where a district court has jurisdiction to adjudicate a declaratory judgment claim, its exercise is discretionary.  *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998).  Defendants object to the Court's exercise of jurisdiction as to the three Policies at issue in the Delaware Cases.  In exercising its

21

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

discretion to hear a declaratory judgment claim, the Court should consider, among other things, whether retaining jurisdiction would encourage the filing of declaratory actions as a means of forum shopping and risk duplicative litigation. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107–08 (9th Cir. 2011). These two factors weigh against this Court hearing Plaintiffs' claim. Since these three Policies are already the subject of litigation in Delaware to determine their validity, adjudicating the same claim here would only reward Plaintiffs' forum shopping and result in parallel litigation in two federal courts.

**D.    Plaintiffs State-Law Statutory Claims Fail**

      1.    <u>Plaintiffs fail to state fraud with particularity</u>

In support of its statutory claims, Plaintiffs rely on the same alleged fraudulently concealed "secret intent" as with the RICO and fraud claims. *See* Compl. ¶¶ 256, 269. For the reasons set forth above, Plaintiffs fail to plead fraud with the requisite particularity.

      2.    <u>Plaintiffs' California's Unfair Competition Law claim fails</u>

Under California's Unfair Competition Law ("CUCL"), the prohibited "unfair competition shall mean and include any lawful, unfair or fraudulent business act . . . ." CAL. BUS. & PROF. CODE § 17200. Plaintiffs assert that PHL has violated the statute on all three grounds. Compl. ¶¶ 271–273. Plaintiffs fail to state a claim, however, because the alleged CUCL violations are based on conduct governed by the California Unfair Insurance Practice Act ("CA-UIPA"). The Supreme Court of California has held that CA-UIPA does not create a private right of action. *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 758 P.2d 58, 61 (Cal. 1988). Moreover, "parties cannot plead around *Moradi-Shal's* holding by merely relabeling their cause of action as one of unfair competition." *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal.App.4th 1061, 1070 (Cal.Ct.App. 2004).

Plaintiffs allege that "PHL engaged in ***unlawful conduct*** in violation of the UCL in that its aforedescribed conduct violates the federal mail and wire fraud

22

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

statutes . . . RICO law . . . and [CA-UIPA]."  Compl. ¶ 271 (emphasis added).  Since Plaintiffs expressly base their ***unlawful conduct*** CUCL claim on violations of CA-UIPA, it is not actionable as a matter of law.  Moreover, as shown above, Plaintiffs fail to state a claim for wire or mail fraud.  Accordingly, Plaintiffs have failed to state an ***unlawful conduct*** CUCL claim.

Plaintiffs further allege that PHL engaged in ***fraudulent conduct*** as described in paragraphs 112–130 of their Complaint.  Compl. ¶ 272.  The specified misconduct is the same alleged misrepresentation underlying Plaintiffs' fraud and civil RICO claims.  As shown above, Plaintiffs fail to adequately plead any actionable misrepresentations, and accordingly, the repackaging of their fraud claim also fails.  Moreover, this alleged conduct is merely a relabeled violation of CA-UIPA, which prohibits "misrepresenting the terms of any policy."  CAL. INS. CODE § 790.03(a).  Since Plaintiffs are prohibited from urging violations of CA-UIPA as CUCL violations, their ***fraudulent conduct*** CUCL claim fails.

Finally, Plaintiffs allege that PHL engaged "in ***unfair conduct*** . . . by engaging in the deceptive and sharp business practices described above, including but not limited to defrauding PHL policyholders and systematically breaching policies that are owned by trusts."  Compl. ¶ 273 (emphasis added).  The alleged fraud here is the same conduct allegedly supporting Plaintiffs' ***fraudulent conduct*** CUCL claim and fails for the same reasons.  The contractual breaches refer to PHL's alleged improper pricing and treating individuals within the same class differently and other conduct designed to induce a lapse.  These alleged breaches are nothing but relabeled CA-UIPA violations; CA-UIPA prohibits "making any misrepresentation to any policyholder . . . for the purpose of inducing or tending to induce the policyholder to lapse, forfeit, or surrender his or her insurance" and "[m]aking . . . any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance."  CAL. INS. CODE § 790.03(a) & (f)(1).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

### 3.   Plaintiffs' Connecticut Unfair Trade Practices Act claim fails

Plaintiffs assert violations by PHL of The Connecticut Unfair Trade Practices Act ("CUTPA"), which statute makes actionable violations of the Connecticut Unfair Insurance Practices Act, Connecticut General Statutes §§ 38a-815, *et seq.* ("CT-UIPA").  *See* CONN. GEN. STAT. ANN. §§ 42-110a et seq.; CONN. GEN. STAT. ANN. 38a-815 et seq.  Plaintiffs specifically allege that PHL made misrepresentations in violation of Section 38a-816(1) and (6) of CT-UIPA based on the same alleged fraudulent conduct underlying Plaintiffs' fraud claim.  For the same reasons that the alleged misrepresentations fail to support Plaintiffs' fraud claim—namely that Plaintiffs have not pled a misrepresentation of fact—they are insufficient here as well.  Moreover, Plaintiffs seek the same damages, namely the premiums paid under the Polices.  As demonstrated above, the premiums are not damages but part of the bargained-for-exchange under the Policies and Plaintiffs cannot recast the premiums as damages based on a hypothetical and contingent future disposition of the proceeds by a court in the event that a Policy is challenged.  Accordingly, Plaintiffs' CUTPA claim should be dismissed.

### E.   Breach of Good Faith and Fair Dealing Claim Fails

Plaintiffs allege a breach of the implied covenant of good faith and fair dealing.  *See* Compl. ¶¶ 238–49.  This claim fails for several reasons.  First, several states in which Plaintiffs' policies were issued do not recognize an independent cause of action breach of the implied covenant of good faith and fair dealing.[18]

In the states that do recognize the cause, the claim only applies when actual benefits are due under the policy.[19]  Here, Plaintiffs fail to allege that any benefits

---

[18]  *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317–18 (11th Cir. 1999) (Florida); *Magnetti v. Univ. of Md.*, 909 A.2d 1101, 1105 (Md. Ct. Spec. App. 2006) aff'd, 937 A.2d 219 (Md. 2007) (Maryland); *Cummings v. Allstate Ins. Co.*, 832 F.Supp.2d 469, 474 (E.D. Pa. 2011) (Pennsylvania); *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903–04 (Ill. 1996) (Illinois).

[19]  *See Brehm v. 21st Century Ins. Co.*, 83 Cal. Rptr. 3d 410, 417 (Cal. Ct. App. 2008) (California); *Coleman Dupont Homsey v. Vigilant Ins. Co.*, 496 F.Supp.2d 433, 437

24

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

are due under the Policies.  As such, Plaintiffs' claim fails.

**F.    Promissory Estoppel Claim Fails**

Plaintiffs seek to enforce any Policies declared void through the equitable doctrine of promissory estoppel.  *Id*. at ¶¶ 250–55.  Since courts cannot enforce illegal or void contracts, Plaintiffs fail to state a claim.  *See, e.g.*, *Dawe*, 28 A.3d at 1067 ("A court may never enforce agreements void *ab initio,* no matter what the intentions of the parties.").

**G.    Breach of Contract Claim Fails**

Plaintiffs claim Phoenix breached the contracts by requiring notification of future transfers of beneficial interests in the trusts that own the Policies.  Plaintiffs do not allege that the contracts prohibited Phoenix from requesting such information.  Even if this constituted a breach, Plaintiffs do not allege how Phoenix's actions constitute a material breach, and how it has caused Plaintiffs damages.

**H.    Plaintiffs Seek Improper Venue**

For the reasons set forth above and in Phoenix's motion to transfer venue, the Court should dismiss the claims asserted by the trusts who are defendants in the Delaware Cases and the other trusts whose allegations do not establish proper venue.

## V.    CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint in its entirety.

Dated: August 6, 2012               HAYNES AND BOONE, LLP

By: /s/ William C. O'Neill
Kenneth G. Parker
William C. O'Neill
PHL VARIABLE INSURANCE COMPANY,
PHOENIX LIFE INSURANCE COMPANY,
and THE PHOENIX COMPANIES, INC.

---

(D. Del. 2007) (Delaware); *Skaling v. Aetna Ins. Co.,* 799 A.2d 997, 1010 (R.I. 2002) (Rhode Island); *Frith v. Guardian Life Ins. Co. of Am.,* 9 F.Supp.2d 734, 740 (S.D. Tex. 1998) (Texas).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 years and not a party to the within action.  I am employed in the County of Orange, State of California, within which county the subject service occurred.  My business address is 18100 Von Karman Avenue, Suite 750, Irvine, California 92612.

On *August 6, 2012,* I served the following document described as: *DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS* on the interested parties in this action, addressed as follows:

Nancy Sher Cohen, Esq.
Proskauer Rose, LLP
2049 Century Park East
Suite 3200
Los Angeles, California 90067-3206
Telephone:   (310) 284-5655
Facsimile:   (310) 557-2193
E-Mail:      ncohen@proskauer.com

in the manner identified below:

**[XXX]**        **BY ELECTRONIC FILING.**  I caused such document(s) to be electronically filed and served through the United States District Court's CM/ECF System for the within action.  This service complies with the Federal Rules of Civil Procedure and Local Rule 5-4.  The file transmission was reported as complete and a copy of the Court's Notice of Electronic Filing will be maintained with the original document(s) in our office.

I declare that I am employed in the offices of a member of the bar of this Court at whose direction this service was made.  Executed on *August 6, 2012,* at Irvine, California.

*Kelley L. Saunders*
Kelley L. Saunders

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**